IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00926-KLM

LINDEN STUART,
MELISSA STUART,
BRUSKIN GIRLS, LLC, a Colorado limited liability company, and
PRESENCE, LLC, a Colorado limited liability company,

    Plaintiffs,

v.

COCORILLA, LTD., a Delaware corporation,

    Defendant.

_____

## ORDER
_____

### ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX

This matter is before the Court on Defendant's **Motion to Dismiss For Lack of Subject Matter Jurisdiction Under FRCP 12(b)(1) and 12 U.S.C. § 1332** [#19] (the "Motion"). Plaintiffs filed a Response [#23] in opposition to the Motion, and Defendant filed a Reply [#24]. The Court has reviewed the Motion, the Response, the Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#19] is **GRANTED**.[1]

### I. Background

Defendant, a start-up entity producing and selling coconut products, sold a series of 7.5% Convertible Promissory Notes to fund the further development of its business.

---

[1] The Court is exercising consent jurisdiction over this matter pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. *Consent* [#25]; *Order of Reference* [#26].

*Compl.* [#1] ¶¶ 9-11.  Plaintiffs Linden Stuart ("L. Stuart"), Melissa Stuart ("M. Stuart"), Bruskin Girls, LLC ("Bruskin"), and Presence, LLC ("Presence") entered into Subscription Agreements with Defendant for Convertible Promissory Notes ("Note(s)") with principal and interest due and payable by Defendant on March 31, 2018.  *Id.* at 2-3.  Each Note provided that "in the case of a default in the payment of any principal of or interest on the Note, the Company will pay the Holder, such further amount as shall be sufficient to cover the costs and expenses of collection, including, without limitation, reasonable attorneys' fees, expense and disbursements."  *See, e.g.*, *Pls.' Attach. 1, Stuart Note* [#23-1] at 2.[2]

More specifically, Plaintiffs L. Stuart and M. Stuart entered into a Subscription Agreement with Defendant pursuant to which they purchased a $50,000 Convertible Promissory Note, with a 7.5% interest rate, dated March 10, 2016, and due and payable on March 31, 2018 (the "Stuart Note").  *Compl.* [#1] ¶ 12; *Stuart Note* [#23-1] at 1.  Plaintiffs allege that $8,353.99 of contractual interest had accrued on the Stuart Note by March 31, 2018.  *Compl.* [#1] ¶ 20.[3]  Plaintiff Bruskin entered into a Subscription Agreement pursuant to which it purchased a $12,500 Convertible Promissory Note, with a 7.5% interest rate, dated April 8, 2016, and due and payable on March 31, 2018 (the "Bruskin Note").  *Compl.* [#1] ¶ 13; *Pls.' Attach. 2, Bruskin Note* [#23-2] at 8.  Plaintiff Presence entered into a Subscription Agreement pursuant to which it purchased a $15,000 Convertible Promissory

---

[2] When considering a motion to dismiss, the Court must usually disregard facts supported by documents other than the complaint unless the Court first converts the motion to dismiss into a motion for summary judgment. *See Jackson v. Integra, Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991). However, the Court may consider documents pertinent to ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000).

[3] In their Response, Plaintiffs appear to contradict their own Complaint [#1] by stating that the interest amount is $7,715.70. *Response* [#23] at 7. Whether this sum or the $8,353.99 stated in the Complaint is correct does not materially impact the resolution of the present Motion [#19].

Note, with a 7.5% interest rate, dated April 8, 2016, and due and payable on March 31, 2018 (the "Presence Note"). *Compl.* [#1] ¶ 14; *Pls.' Attach. 3, Presence Note* [#23-3] at 8.

Plaintiffs unsuccessfully sought enforcement of the Notes issued, alleging that "[d]espite due demand, Defendant Cocorilla has, to date, failed to pay any of the amounts due and owing under the . . . Note." *See, e.g., Compl.* [#1] ¶ 19. On April 19, 2018, Plaintiffs filed their Complaint [#1] against Defendant. Plaintiffs assert that the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 over enforcement of the Stuart Note ("Stuart Claim") and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the other claims.[4] *Compl.* [#1] ¶¶ 5-6. Plaintiffs assert six claims for relief: (1) the Stuart Claim; (2) enforcement of the Bruskin Note; (3) enforcement of the Presence Note; and (4, 5, 6) claims for unjust enrichment against Defendant by the Stuarts, Presence, and Bruskin. *Id.* ¶¶ 15-53.

Attorneys Christopher P. Milazzo ("Milazzo") and Trevor J. Willard ("Willard") appear to have worked for all four Plaintiffs collectively throughout the relevant times of this lawsuit. *Pls.' Attach. 4, Milazzo Affidavit* [#23-4] at 5; *Pls.' Attach. 5, Willard Affidavit* [#23-5] at 4. Their invoices do not separately identify billing per claim or per Plaintiff. *See id.* Plaintiffs assert that attorneys' fees thus far total $10,492.40. *Response* [#23] at 8. Moreover, Plaintiffs' "counsel anticipates future attorney fees to be greater than $7,000." *Response* [#23] at 8.

In the present Motion [#19], Defendant argues that none of the claims meet the minimum amount in controversy of $75,000 required by 28 U.S.C. § 1332(a). *Motion* [#19]

---

[4] Plaintiffs do not argue that the four notes may be viewed collectively so as to meet the jurisdictional minimum amount in controversy. *See Compl.* [#1] ¶ 5; *Response* [#23].

at 3. Plaintiffs respond that, when the contractual interest and attorneys' fees are included, the Stuart Claim meets the jurisdictional minimum. *Response* [#23] at 7-8. Defendant replies that Plaintiffs improperly (1) aggregated the attorneys' fees on the individual notes and (2) speculated on future attorneys' fees to meet the minimum. *Reply* [#24] at 4-6.

Neither Plaintiffs' Complaint [#1] nor Response [#23] specifies the mathematical breakdown or exact amount of damages they seek for the Stuart Claim; rather, they contend the total is "well in excess" of $75,000. *Response* [#23] at 8. Without specifically saying so, Plaintiffs appear to rely on the following numbers to meet the jurisdictional minimum: (1) the $50,000 principal on the Stuart Note, (2) the $8,353.99 of interest on the Stuart Note, (3) $10,492.39 in aggregated past attorneys' fees, and (4) over $7,000 of estimated future attorneys' fees. *See Response* [#23] at 7-8. These four amounts combined equal $75,846.38. The Court discusses these amounts in greater detail in the analysis section below.

## II. Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the Court has jurisdiction to properly hear the case before it. Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); Fed. R. Civ. P. 12(b)(1). Statutes conferring subject matter jurisdiction on federal courts are to be strictly construed. *F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). It is well established that "[t]he party invoking federal jurisdiction bears the burden of establishing such jurisdiction as a threshold matter." *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: facial attack or factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a facial attack, the Court accepts the allegations of the complaint as true. *Id.* By contrast, when reviewing a factual attack, the Court "may not presume the truthfulness of the complaint's factual allegations." *Id.* at 1003. With a factual attack, the moving party challenges the facts upon which subject matter jurisdiction depends. *Id.* The Court therefore must make its own findings of fact. *Id.* In order to make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir.), *cert. denied*, 484 U.S. 986 (1987)). The Court's reliance on "evidence outside the pleadings" to make findings concerning purely jurisdictional facts does not convert a motion to dismiss pursuant to Rule12(b)(1) into a motion for summary judgment pursuant to Rule 56. *Id.*

### III.  Analysis

Defendant argues that the Court lacks subject matter jurisdiction because there is no single claim meeting the $75,000 minimum amount in controversy. *Motion* [#19] at 3. Specifically, Defendant argues that because (1) accrued attorneys' fees cannot be aggregated for purposes of diversity jurisdiction, and (2) speculative attorneys' fees cannot be considered to determine the amount in controversy, the Court lacks subject matter jurisdiction. *Reply* [#24] at 4-6.

Pursuant to 28 U.S.C. § 1332(a), diversity jurisdiction is conferred on district courts in all civil actions between citizens of different states "where the matter in controversy

exceeds the sum or value of $75,000, exclusive of interest and costs."[5]  In an action with multiple claims, a party seeking jurisdiction must demonstrate that at least one claim fully meets the amount in controversy requirement, giving the court original jurisdiction.  *Exxon Mobil Corp. v. Allapattah Serv. Inc.*, 545 U.S. 546, 559 (2005).  Specifically, where the "plaintiffs assert rights that arise from individual contracts with a defendant, those rights are separate and distinct, and thus, their claims may not be aggregated."  *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 898 (10th Cir. 2006) (citing *Smith v. GTE Corp.*, 236 F.3d 1292, 1309 (11th Cir. 2001)).

A plaintiff may seek supplemental jurisdiction only once it has established original jurisdiction.  28 U.S.C. § 1367(a).  The exercise of supplemental jurisdiction "is within a district court's discretion."  *Wittner v. Banner Health*, 720 F.3d 770, 781 (10th Cir. 2013).  Pursuant to 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction."  *See Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1236 (10th Cir. 1998).

Further, "[w]hen federal subject matter jurisdiction is challenged based on the amount in controversy requirement, the plaintiffs must show that it does not appear to a legal certainty that they cannot recover the jurisdiction[al] amount."  *Woodmen of the World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1216 (10th Cir. 2003) (internal quotation marks omitted).  This requires a plaintiff to demonstrate "that it is not legally certain that the claim is less than the jurisdictional amount."  *Id.*  Moreover, "[t]he legal certainty standard

---

[5] The parties do not appear to contest that diversity citizenship exists.  Plaintiffs have Colorado residence; Defendant is a Delaware corporation.  *Compl.* [#1] at 1.

is very strict. As a result, it is difficult for a dismissal to be premised on the basis that the requisite jurisdictional amount is not satisfied." *Id.* Accordingly, "[t]here is a strong presumption favoring the amount alleged by the [Plaintiff]." *Id.*

Defendant, in its Motion [#19] and Reply [#24], does not contest that the interest accrued pursuant to contract on the Stuart Note may be included in the total amount in controversy. The Tenth Circuit has held that, while the amount in controversy must exclude "interests and costs," 28 U.S.C. § 1332(a), this only extends to interest "arising solely by virtue of delay in payment" of the underlying amount, rather than to contractually-mandated interest. *State Farm Mut. Auto. Ins. Co. v. Navarez*, 149 F.3d 1269, 1271 (10th Cir. 1998) (quoting *Brainin v. Melikian*, 396 F.2d 153, 155 (3d Cir. 1968)).

Thus, the Court first addresses whether Plaintiffs may include (1) aggregated accrued attorneys' fees for all claims and (2) aggregated future attorneys' fees in order to meet the minimum amount in controversy for the Stuart Claim. The Court then discusses the total amount in controversy for the Stuart Claim on the facts presented.

**A.     Aggregation of Accrued Attorneys' Fees**

Defendant argues that Plaintiffs cannot include the aggregate amount of attorneys' fees from the multiple claims for the purposes of diversity jurisdiction. *Reply* [#24] at 4. Plaintiffs, while not expressly addressing the issue or stating that the $10,492.40 billed by Mr. Milazzo and Mr. Willard includes time on all claims, fail to show division of the fees. *Milazzo Affidavit* [#23-4] at 5; *Willard Affidavit* [#23-5] at 4.

Where attorneys' fees are provided by statute or contract, they may be included in the minimum amount in controversy to satisfy diversity jurisdiction. *Mo. State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933); *Molzahn v. State Farm Mut. Auto. Ins. Co.*, 422 F.2d

1321, 1322 (10th Cir. 1970); *Plus Sys., Inc. v. New England Network, Inc.*, 804 F. Supp. 111, 116 (D. Colo. 1992). The Stuart Note includes attorneys' fees in the event of Defendant's default. *Stuart Note* [#23-1] at 2. Thus, attorneys' fees for the Stuart Claim may be included in the total amount. *See, e.g.*, *Molzahn*, 422 F.2d at 1322.

However, a party seeking diversity jurisdiction may not aggregate the attorneys' fees from multiple claims to meet the amount in controversy requirement. *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1293 (10th Cir. 2001) (*abrogated on other grounds by Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547 (2014)). Courts have rationalized that plaintiffs' separate and distinct right to fees precludes aggregation. *See id.*; *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1266 (11th Cir. 2000).

Invoices and affidavits provided by Plaintiffs show that their attorneys billed them for work on all claims collectively. *Milazzo Affidavit* [#23-4] at 5; *Willard Affidavit* [#23-5] at 4. Thus, it is unclear how much of the $10,492.40 of charged fees stems from the Stuart Claim and can appropriately be considered with respect to the amount in controversy. These facts are critical; without them the Court cannot determine whether the total amount in controversy on the Stuart Claim meets the jurisdictional minimum. Despite the presumption in favor of Plaintiffs, it is not legally certain on this record that the claim is not less than the jurisdictional amount.

**B.     Aggregation of Future Attorneys' Fees**

Plaintiffs also rely, in part, on an estimate of future attorneys' fees to reach the jurisdictional minimum for the Stuart Note. *See Response* [#23] at 7-8. Where recovery of attorneys' fees is permitted, a "reasonable estimate" may be used when calculating the amount in controversy. *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998).

However, while reasonable estimates are permitted, speculation and conclusory allegations that the amount in controversy exceeds $75,000 are insufficient to establish federal court jurisdiction. *See, e.g.*, *N.M. Off-Highway Vehicle All. v. U.S. Forest Serv.*, 645 F. App'x 795, 804 (10th Cir. 2016) ("Federal courts scrupulously guard the boundaries of their jurisdiction; they are duty-bound not to permit a standing determination to rest on speculation or conjecture."); *Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1182 (10th Cir. 2000) (remanding to district court to conduct additional proceedings and examine facts where plaintiff sought judgment "for a sum sufficient to invoke the jurisdiction of this court"). Moreover, as discussed, attorneys' fees from multiple claims may not be aggregated to meet the amount in controversy for one claim. *Martin*, 251 F.3d at 1293. Guided by these rules, the Court first addresses the total estimated amount of future attorneys' fees and then addresses the amount specific to the Stuart Note.

### 1. Total Estimated Amount of Future Attorneys' Fees

Plaintiffs offer a vague and conclusory statement that attorneys anticipate future fees will be "greater than $7,000 . . . bringing the total value of the Stuart Note well in excess of $75,000." *Response* [#23] at 7-8. To premise subject matter jurisdiction on an amount "greater than $7,000" would require improper speculation by the Court. *See, e.g.*, *N.M. Off-Highway Vehicle All.*, 645 F. App'x at 804. Thus, the Court considers the estimated fees to be $7,000 rather than some vague unidentifiable number "greater than" that figure.

### 2. Amount of Future Attorneys' Fees Attributable to the Stuart Claim

Not only do Plaintiffs fail to provide a breakdown of accrued attorneys' fees per claim, but they also fail to provide an estimated breakdown of the $7,000 of future fees they

anticipate accruing. *See Response* [#23]; *Milazzo Affidavit* [#23-4]; *Willard Affidavit* [#23-5]. Because fees attributable to the other claims cannot count towards the minimum amount in controversy for the Stuart Claim, the Court is again called to improperly speculate about the amount of the estimated future fees attributable to the Stuart Claim. Moreover, as discussed in Section III.C. below, a very high amount would have to be attributable to the Stuart Claim; it seems unlikely that such a high amount would be attributable to a claim on one note alone out of three. *See Exxon Mobil Corp.*, 545 U.S. 546.

**C.    Total Amount in Controversy**

Ultimately, the Court finds that Plaintiffs provide insufficient facts to demonstrate that the Stuart Claim meets the minimum amount in controversy for subject matter jurisdiction. Their assertion of jurisdiction not only requires improper speculation by the Court, but also assumes that a vast majority of both the past aggregated attorneys' fees of $10,492.39 and estimated future attorneys' fees of $7,000 are attributable to the claim. For example, if a third of the past aggregated fees and a third of the future estimated fees are attributed to each of the three notes, and one third of all fees is therefore added to the $50,000 Stuart Note principal and its $8,353.99 interest, the total would only be $64,184.79. If all of the past aggregated fees and all of the estimated fees are attributed to the Stuart Claim, the total would be $75,846.39. This demonstrates that no more than $846.39 of the $17,492.40 past and future attorneys' fees can be attributed to the other claims for the Court to have jurisdiction over the Stuart Claim. Given that the lawsuit involves three separate Notes, it seems unlikely that this high of a percentage of fees (95%) is solely attributable the Stuart Claim.

Because Plaintiffs have provided insufficient facts, and because they improperly

aggregated attorneys' fees, they fail to meet their burden to show that it is not legally certain that the Stuart Claim is not for less than $75,000. Thus, because the Court must strictly construe grants of subject matter jurisdiction, the Court concludes that it does not have subject matter jurisdiction over this claim. Further, the Court therefore declines to exercise supplemental jurisdiction over Plaintiffs' other claims. *See* 28 U.S.C. § 1367(c)(3); *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998) (citations omitted) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion [#19] is **GRANTED**, and Plaintiffs' claims are **DISMISSED without prejudice**. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (stating that dismissal for lack of subject matter jurisdiction must be without prejudice).

IT IS FURTHER **ORDERED** that the Clerk of Court is directed to **CLOSE** this case.

Dated: February 11, 2019

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge